UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ENCOMPASS INDEMNITY COMPANY,                                                 Plaintiff,

v.                                                                     Civil Action No. 3:16-cv-506-DJH-DW

JAMES MARQUARDT, et al.,                                                       Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Encompass Indemnity Company seeks a declaratory judgment that it has no duty to provide additional payment to Defendants James, Tanya, and Katherine Marquardt under an insurance policy James and Tanya Marquardt purchased from Encompass. (Docket No. 1) Defendants allege that Encompass failed to pay them the full benefits of the policy, thereby breaching the contract. (D.N. 7) Encompass has moved for partial summary judgment on the issue of excess underinsured motorist benefits. (D.N. 16) Because the policy, when read as a whole, indicates that the Marquardts did not contract for such coverage, Encompass is entitled to judgment as a matter of law, and the Court will accordingly grant its motion for partial summary judgment.

**I.**       **Background**

This action arises out of an insurance policy issued by Encompass to James and Tanya Marquardt. (D.N. 16-1, PageID # 278) The policy provides, among other coverages, "Underinsured Motorist Coverage" with a per-person/per-accident limit of $250,000/$500,000. (D.N. 16-8, PageID # 325) The policy also contains a "Personal Umbrella Coverage Endorsement," which Defendants argue includes excess underinsured motorist benefits beyond the "Underinsured Motorist Coverage" limits. (D.N. 16-7)

1

On November 25, 2015, while walking, Tanya Marquardt and her daughter, Katherine Marquardt, were struck by an automobile and injured. (D.N. 7, PageID # 242) At the time of the accident, Defendants were covered by the Encompass policy described above. Subsequently, the insurance company that covered the automobile's driver tendered $1,500,000 to Defendants, which was the maximum amount the driver's insurance policy provided for such an accident. (D.N. 16-1, PageID # 279) This amount did not wholly cover the injuries Defendants sustained in the accident. (*Id.*) On August 4, 2016, Encompass tendered $250,000 in underinsured motorist benefits to Defendants for Tanya Marquardt's claim related to the accident, pursuant to the per-person limit under the policy's "Underinsured Motorist Coverage." (*Id.*, PageID # 280) Encompass also related its position that, under the plain language of the policy, there was no excess underinsured motorist benefit under the Umbrella Coverage. Defendants disagreed, claiming that the Umbrella Coverage provides excess underinsured motorist benefits. (D.N. 1, PageID # 3–4) Encompass thus filed this action seeking declaratory judgment that it has no duty to provide excess underinsured motorist benefits under the Umbrella Coverage. (*Id.*) Encompass has moved for partial summary judgment as to its claim. (D.N. 16)

## II.     Legal Standard

In order to grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, the parties' sole disagreement concerns the interpretation of the policy at issue. Thus, there is no genuine dispute of material fact. *See Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) ("It is well settled that the interpretation of contracts is an issue of law for the court to decide."). Accordingly, the Court need only decide if Encompass is entitled to judgment as a matter of law.

2

As the moving party, Encompass bears the initial burden of convincing the Court that it is so entitled. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because this is a diversity action, Kentucky law governs the substantive issues. *Erie v. Tompkins*, 304 U.S. 64 (1938); *see also Associated Indus. of Kentucky, Inc. v. U.S. Liability Ins. Grp.*, 531 F.3d 462, 465 (6th Cir. 2008) (applying Kentucky law in a diversity action concerning the interpretation of an insurance contract). "When no ambiguity exists in the contract, [Kentucky courts] look only as far as the four corners of the document to determine the parties' intentions." *3D Enter. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "Terms in an insurance policy are to be given their plain meanings, and courts should not make a different insurance contract for the parties by enlarging the risk contrary to the natural and obvious meaning of the existing contract." *Pierce v. W. Am. Ins. Co.*, 655 S.W.2d 34, 36 (Ky. Ct. App. 1983). Furthermore, when construing a portion of a contract, "[t]he whole of the contract should be read." *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339, 343 (Ky. Ct. App. 2008).

Defendants argue that the "reasonable expectations doctrine" applies to this case. (D.N. 17, PageID # 349–50) The doctrine "is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (internal quotations omitted). "[W]hen such an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations." *Id.* (internal quotations omitted). Additionally, if "from the language, there is doubt or uncertainty as to its meaning, *and it is susceptible to two interpretations*, one favorable to the insured and the other favorable to the insurer, the former will be adopted." *St. Paul Fire &*

*Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994) (emphasis added).

Yet as even Defendants note, strict construction against the insurer cannot overcome "plain, clear language resulting in strained or forced construction." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). Moreover, "the mere fact that a party attempts to muddy the water and create some question of interpretation does not necessarily create an ambiguity. Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True*, 99 S.W.3d at 443 (alterations and citations omitted); *see also St. Paul Fire. & Marine Ins. Co.*, 870 S.W.2d at 226 ("Neither should a nonexistent ambiguity be utilized to resolve a policy against the company."). As detailed below, many of the "ambiguities" Defendants cite are strained readings of the policy, when the policy is read as a whole. Accordingly, the reasonable expectations doctrine is inapplicable and there is no need to construe the policy against Encompass.

### III. Application

There are three portions of the policy at issue: (1) the "Underinsured Motorist Coverage," the "Umbrella Coverage Endorsement," and (3) the "Coverage Summary" issued to Defendants on or about September 11, 2015. (D.N. 16-1, PageID # 281)

In support of its motion, Encompass cites the Umbrella Coverage Endorsement's "Coverages" section, which states:

1. **Insuring Agreement**

    **We** will pay damages in excess of the MINIMUM RETAINED LIMIT shown on the Coverage Summary for[] which a **covered person** becomes legally liable due to an occurrence resulting in:

    (a) **Bodily Injury** or property damage to which this insurance applies . . . ."

(D.N. 16-7, PageID # 306) Encompass argues that the quoted language clearly indicates that the Umbrella Coverage is trigged only when the insured becomes liable to a third party. (D.N. 16-1, PageID # 284) As Encompass further notes, none of the remaining terms under the "Coverages" section, including the subsection entitled "Additional Coverages," explicitly mention excess underinsured motorist benefits. (D.N. 16-7, PageID # 306–07, 308–09). Therefore, from the four corners of the Endorsement, it appears that Defendants are not entitled to excess underinsured motorist benefits under the Umbrella Coverage.

To rebut this conclusion, Defendants first cite language in the Endorsement that states:

> **PERSONAL UMBRELLA COVERAGE ENDORSEMENT**
> In consideration of an additional premium, **we** will provide the coverage described by the provisions of this endorsement.

(D.N. 17-1, PageID # 355) Having paid an additional premium for Umbrella Coverage, Defendants argue, they are entitled to excess underinsured benefits.

Defendants are unquestionably entitled to the benefits for which they contracted and paid a premium. The key language in the Endorsement, however, is "coverage *described by the provisions* of this endorsement." (*Id.* (emphasis added)) The scope of the Umbrella Coverage's benefits is determined by the description provided within the Endorsement. A closer analysis of the Endorsement language is therefore required.

Pertaining to the Umbrella Coverage Endorsement specifically, Defendants cite its definition of "Minimum Retained Limit," which provides:

> 8. **Minimum Retained Limit** means the greater of:
>
>    a. The total limits of any **underlying insurance** and other insurance that applies to the **occurrence** that:
>
>       (1) Are available to a **covered person**;
>
>       (2) Would have been available had the **covered person** fully complied with the terms and conditions of the **underlying policy**;

5

> (3) Would have been available except for the bankruptcy or insolvency of the insurer providing the **underlying insurance**; *or*
>
> b. The MINIMUM RETAINED LIMIT amount shown on the Coverage Summary.

(D.N. 17-1, PageID # 357 (emphasis added)) Defendants argue that this definition, and its use of "greater of" language, establishes that they are entitled to the "greater of" the Umbrella Coverage limit ($1,000,000) and the underlying insurance limit ($250,000/$500,000 per person/per accident). (*See* D.N. 16-8, PageID # 325, 327) But the policy makes clear that "Minimum Retained Limit" refers to the minimum amount of underlying insurance Defendants must maintain to trigger Umbrella Coverage:

> a. . . . The amount of any payment **we** make under PERSONAL UMBRELLA COVERAGE is subject to the applicable:
>
> (1) **MINIMUM RETAINED LIMIT;**
>
> b. **YOU** must maintain **underlying insurance** for each exposure shown on the Coverage Summary for PERSONAL UMBRELLA COVERAGE, with not less than the MINIMUM RETAINED LIMIT shown on the Coverage Summary

(D.N. 17-1, PageID # 358) *See Phila. Indem. Ins. Co. v. Emp'rs Ins. Co. of Wausau*, 703 F. Supp. 2d 41, 50 (D. Me. 2010) ("Although many excess policies specifically require the maintenance of underlying insurance, setting a minimum retained limit is effectively the same thing."). The "greater of" language determines which number will serve as this minimum amount: either (1) the Defendants' underlying insurance limits, as detailed on the first page of the Coverage Summary (D.N. 16-8, PageID # 323); or (2) the amount listed as the "Minimum Retained Limit" in the Coverage Summary's Umbrella Coverage section. (*Id*., PageID # 327) Nothing in the policy suggests that Defendants are entitled to the greater of the $250,000/$500,000 Underinsured Motorist Coverage limits and the $1,000,000 Umbrella Coverage limit.

Defendants also point to language in the Coverage Summary that states:

> Personal Umbrella Coverage (Coverage applies only if a premium *or* limit is shown)

6

> . . .
>
> THIS PERSONAL UMBRELLA SEGMENT DOES NOT PROVIDE COVERAGE FOR EXCESS UNINSURED OR UNDERINSURED MOTORIST COVERAGE EXCEPT FOR VEHICLES WHERE A LIMIT IS SHOWN FOR EXCESS UNINSURED OR UNDERINSURED MOTORIST COVERAGE[.]

(D.N. 17-2, PageID # 374 (emphasis added)) Defendants argue that the "or" language in the parenthetical governs the subsequent paragraph and therefore establishes that because they paid a premium for the Umbrella Coverage, they are entitled to excess underinsured motorist benefits regardless of whether a limit is shown in the Coverage Summary. (*Id.*, PageID # 347–48)

This argument impermissibly stretches the policy language. The disclaimer "Coverage applies only if a premium or limit is shown" accompanies every subsection of the Coverage Summary. (*See* D.N. 17-2, PageID # 370, 372, 374) The parenthetical signals that the insured is not entitled to the coverage listed in that subsection (e.g., underlying automobile insurance, homeowners insurance, umbrella coverage) unless an accompanying premium or limit is shown. By listing a premium or limit, the policy simply states that the insured is entitled to the coverage listed, as defined in the specific portion of the policy pertaining to the coverage and subject to the limitations listed within the policy. *See Gregorio v. GEICO General Ins. Co.*, 535 F. App'x 545, 547 (9th Cir. 2013) (finding that an umbrella insurance policy unambiguously lacked underinsured motorist coverage where policy expressly excluded "[p]ersonal injury or property damage resulting from an uninsured or underinsured motorist claim unless a premium is shown for the insured or underinsured motorist coverage in the declarations" and declarations page did not list premium for underinsured motorist coverage); *Winchester Indus., Inc. v. Sentry Ins.*, 536 F. Supp. 2d 203, 209 (D. Conn. 2008) (same)

The all-caps language quoted by Defendants is such a limitation. It explicitly states that while Defendants have elected "umbrella coverage," such coverage does not include excess

7

underinsured motorist benefits unless another, more specific limit is shown for "excess underinsured motorist coverage" on the Coverage Page. No such limit is provided here, and as explained, the Endorsement makes no explicit mention of excess underinsured motorist benefits (*See* D.N. 16-8; D.N. 16-7). Therefore, the policy, read as a whole, indicates that the Umbrella Coverage Defendants elected does not provide such benefits. *See Gregorio*, 535 F. App'x at 547; *Winchester Indus., Inc.*, 536 F. Supp. 2d at 209.

Defendants likewise misconstrue the "Losses We Do Not Cover" section of the Umbrella Coverage Endorsement. The section states:

> **Losses We Do Not Cover**
>
> **We** do not provide any coverage under this endorsement for:
>
> 1. Benefits **you** or anyone else are, or would be entitled to under any:
>     a. **No-fault** coverage;
>     b. **Uninsured or Underinsured Motorists** coverage; [or] . . .
>    similar coverage.

(D.N. 16-7, PageID # 309) Encompass argues that this section unambiguously excludes underinsured motorist benefits from the Umbrella Coverage. (D.N. 16-1, PageID # 284) Defendants maintain, however, that the section merely excludes from the Umbrella Coverage the $250,000/$500,000 they are entitled to under their Underinsured Motorist Coverage. (D.N. 17, PageID # 351)

Defendants' reading of this section misses the mark. The plain language of the section clearly indicates that it serves as an exclusion. *See Gregorio*, 535 F. App'x at 547. It communicates to the insured that if she wishes to obtain underinsured motorist benefits, she must do so through separate coverage and not through the Umbrella Coverage. Although Defendants are correct that exclusions are to be narrowly interpreted, *Eyler v. Nationwide Mut. Fire Ins. Co.*,

824 S.W.2d 855, 859 (Ky. 1992), the Court is not required to read express language out of a contract. Indeed, the Kentucky Supreme Court recently upheld the right of insurers to exclude underinsured motorist coverage with clear and unambiguous language. *Phila. Indem. Ins. Co., Inc. v. Tryon*, 502 S.W.3d 585, 592 (Ky. 2016) ("[W]e can only state with certainty today that Kentucky public policy does not bar reasonable [underinsured motorist] exclusion provisions."). The exclusion here is clear and unambiguous.

Lastly, Defendants note that the Coverage Summary states:

| COVERAGES | LIMITS |
|---|---|
| PERSONAL UMBRELLA COVERAGE applies to all covered exposures and additional covered exposures | $1 000 000 |

(D.N. 17-2, PageID # 373) The Coverage Summary does not define either "covered exposures" or "additional covered exposures." (*Id*.) Defendants thus argue that those terms must be construed liberally and in favor of [Defendants'] reasonable expectations." (D.N. 17, PageID # 350) Defendants' "reasonable expectation" is that the accident in question would constitute a "covered exposure" and that they thus would be entitled to excess underinsured motorist benefits. (*Id*.)

First, as noted above, the "reasonable expectations doctrine" applies only when the Court is presented with a contractual ambiguity. *True*, 99 S.W.3d at 443. No such ambiguity is presented here. Furthermore, when construing a portion of a contract, "[t]he whole of the contract should be read." *Speedway Superamerica*, 250 S.W.3d at 343. When the Marquardts' policy is read as a whole, it is clear that "covered exposures" relate to the "COVERAGES" heading on the Umbrella Coverage Endorsement, while "additional covered exposures" relate to the "ADDITIONAL COVERAGES" heading on the Endorsement. (D.N. 16-7, PageID # 306, 308) The language that follows each heading in the Endorsement neither explicitly nor implicitly provides for excess underinsured motorist benefits. Thus, "covered exposures" and

9

"additional covered exposures" are not susceptible to two interpretations, and therefore the reasonable expectations doctrine is not triggered. *St. Paul Fire & Marine Insur. Co.*, 870 S.W.2d at 227.

### IV. Conclusion

The language of the policy, taken as a whole, makes clear that the Defendants are not entitled to excess underinsured motorist benefits under the Umbrella Coverage. Encompass is therefore entitled to judgment as a matter of law. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Encompass's motion for partial summary judgment (D.N. 16) is **GRANTED**.